UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MATTHEW SCOTT, *et al.*,

Plaintiffs,

v.

TRUSTIFY INC., *et al.*,

Defendants.

Civil No. 1:19-cv-00032-LO-MSN

**REPORT & RECOMMENDATION**

This matter comes before the Court on plaintiffs'[1] Amended Motion for Default Judgment Against Defendants Trustify, Inc. and Daniel K. Boice (Dkt. No. 13). Having reviewed the record and the pleadings, the undersigned Magistrate Judge recommends granting plaintiffs' motion for the reasons that follow.

## I. Procedural Background

Plaintiffs brought an action against defendants Trustify, Inc. ("Trustify") and Daniel K. Boice ("Boice") (collectively, "defendants") for violations under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"), and for breach of contract in violation of Virginia common law. *See* Compl. (Dkt. No. 1) ¶¶ 69-81. On February 28, 2019, Boice was properly served (Dkt. No. 6) and, on March 6, 2019, Trustify was properly served (Dkt. No. 7).[2] Pursuant to the federal rules, Boice was required to answer the Complaint by March 21, 2019, and Trustify was required to answer the Complaint by March 27, 2019; neither defendant

---

[1] Plaintiffs include Matthew Scott, Elisabeth Nugent, Kevin Wiggins, Stacey Blackburn, Bey Wesley, Matthew Blanchard, Bernadette Vielhaber, and Andrew Little.

[2] Although the docket reflects that Trustify was not served until March 13, 2019, that appears to be a clerical error. *See* Certificate of Service (Dkt. No. 5) 1 (certifying that Trustify was served on March 6, 2019).

answered the Complaint. Accordingly, on April 2, 2019, plaintiffs moved for an entry of default (Dkt. No. 8), which the Clerk entered on April 5, 2019 (Dkt. No. 9).

Pursuant to a Court Order (Dkt. No. 10), on May 30, 2019, plaintiffs filed an Amended Motion for Default Judgment Against Defendants Trustify, Inc. and Daniel K. Boice (Dkt. No. 13).[3] In support, plaintiffs filed a memorandum of law in support of their motion (Dkt. No. 14), including affidavits from each individual plaintiff (Dkt. No. 14-1) and Jack Jarrett (Dkt. No. 14-2), and noticed a hearing for June 28, 2019 (Dkt. No. 15). On that date, counsel for plaintiffs appeared at the hearing on their motion for default judgment, but counsel for defendants failed to appear (Dkt. No. 16).

## II. Factual Background

Plaintiffs were employees of defendants until November 26, 2018, when they were fired. Compl. (Dkt. No. 1) ¶ 16. Trustify is a start-up technology company that operates an application to connect private investigators with individuals and businesses both inside and outside of Virginia. *Id.* at ¶¶ 14-15. It is a Virginia corporation located in Arlington, Virginia. *Id.* at ¶ 5. Boice is the founder and CEO of Trustify. *Id.* at ¶ 6. In this position, Boice (a) managed and controlled the business; (b) was the most senior manager and supervisor; (c) oversaw and evaluated plaintiffs' job duties; (d) made or delegated the decisions to hire plaintiffs; (e) set and determined plaintiffs' job duties and responsibilities, and rate and method of payment; (f) set, controlled, and monitored plaintiffs' work schedule; (g) maintained or caused to be maintained all of plaintiffs' work and employment records; and (h) had full authority to fire plaintiffs. *Id.* at ¶ 7. In this capacity, Boice commingled Trustify's funds with his personal funds. *See, e.g.*, *id.* at

---

[3] Plaintiffs initially filed a Motion for Default Judgment Against Defendants Trustify, Inc. and Daniel K. Boice (Dkt. No. 11); however, the filing of the pleading contained a clerical error. Accordingly, the parties re-filed an amended motion for default judgment.

¶ 21 ("In 2018, Boice used Trustify funds to pay for personal expenses, including approximately $600,000 for a documentary . . . and expenses related to a personal lawsuit . . . .").

By Fall 2018, Trustify was in financial distress. *Id.* at ¶ 55. Trustify stopped paying amounts owed to some vendors, untimely paid plaintiffs in October 2018, and bounced several employees' paychecks. *Id.* at ¶¶ 56-57. At that time, Trustify sought other means to pay its employees rather than by direct deposit, such as with cashier's checks or through the application bill.com. *Id.* at ¶ 58. On November 15, 2018 (which was the payday for plaintiffs for the period of November 1 to November 14, 2018), Boice stated that he was going to the bank to get the employees' paychecks, but did not return. *Id.* at ¶¶ 59-60. The next day, plaintiffs emailed Boice formally requesting payment for their unpaid wages and for their unpaid tax withholdings for October 2018. *Id.* at ¶ 61. Plaintiffs further stated that if Trustify did not do so, they would "be forced to make a complaint to the Virginia Labor Board." *Id.* at ¶ 62.

On November 19, 2018, plaintiffs met with Boice. *Id.* at ¶ 63. When they asked about their paychecks, Boice "became extremely angry and threatening" towards them and told them to leave. *Id.* at ¶¶ 63-64. Trustify's Vice President instructed plaintiffs to take paid time off/paid vacation through the Thanksgiving holiday. *Id.* at ¶ 65. Trustify deactivated plaintiffs access to the company email and instant messaging system. *Id.* at ¶ 66. On November 26, 2018, Boice terminated plaintiffs' employment via email. *Id.* at ¶ 67.

Accordingly, plaintiffs brought three claims against defendants: Counts I and II allege violations under the FLSA because (a) defendants failed to pay plaintiffs' minimum wage and (b) defendants retaliated against plaintiffs after they engaged in FLSA-protected activity; and Count III alleges that defendants breached their employment contracts by failing to pay them. For the Count I, plaintiffs seek unpaid minimum wages plus liquidated damages, pre- and post-

judgment interest, attorney's fees and costs, among other relief. For Count II, plaintiffs seek two times the amount of lost wages, attorney's fees and costs, expenses incurred as a result of defendants' retaliation, damages for emotional distress, among other relief. And for Count III, plaintiffs seek all reasonably foreseeable damages caused by defendants' breach, pre- and post-judgment interest, among other relief. Below are the unpaid minimum wages per plaintiff.

Plaintiff Matthew Scott worked for Trustify from March 13, 2017 until November 26, 2018. *Id.* at ¶ 23. His offer letter provided that his annual salary was $75,000.00. *Id.* at ¶ 24. From November 1 to November 26, 2018, he worked each workday from 9:00 a.m. until 5:00 p.m. with a one-hour lunch break except for between November 19 through November 23, 2018, when plaintiffs were sent home for paid time off/paid holiday leave. *Id.* at ¶ 25. Pursuant to Scott's contract, he is entitled to $5,342.467 for the period between November 1 to November 26, 2018. *Id.* at ¶ 26.

Plaintiff Elisabeth Nugent worked for Trustify from June 12, 2017 until November 26, 2018. *Id.* at ¶ 27. Her contract provided that her annual salary was $63,000.00. *Id.* at ¶ 28. From November 1 to November 26, 2018, she worked each weekday from 9:00 a.m. until 5:00 p.m. with a one-hour lunch break except for between November 19 through November 23, 2018, when plaintiffs were sent home for paid time off/paid holiday leave. *Id.* at ¶ 29. Pursuant to Nugent's contract, she is entitled to $4,487.67 for the period between November 1 to November 26, 2018. *Id.* at ¶ 30.

Plaintiff Kevin Wiggins worked for Trustify from July 5, 2017 until November 26, 2018. *Id.* at ¶ 31. His offer letter provided that his annual salary was $50,000.00. *Id.* at ¶ 32. From November 1 to November 26, 2018, he worked each weekday from 9:00 a.m. until 5:00 p.m. with a one-hour lunch break except for between November 19 through November 23, 2018,

when plaintiffs were sent home for paid time off/paid holiday leave. *Id.* at ¶ 33. Pursuant to Wiggins' contract with Trustify, he is entitled to $3,561.64 for the period between November 1 to November 26, 2018. *Id.* at ¶ 34.

Plaintiff Stacy Blackburn worked for Trustify from May 7 until November 26, 2018 as a Content Producer. *Id.* at ¶ 35. Her offer letter provided her annual salary was $70,000.00. *Id.* at ¶ 36. From November 1 to November 26, 2018, she worked each weekday from 9:00 a.m. until 5:00 p.m. with a one-hour lunch break except for between November 19 through November 23, 2018, when plaintiffs were sent home for paid time off/paid holiday leave. *Id.* at ¶ 37. Pursuant to Blackburn's contract with Trustify, she is entitled to $4,986.30 for the period between November 1 to November 26, 2018. *Id.* at ¶ 38.

Plaintiff Bey Wesley worked for Trustify from March 17, 2017 until November 26, 2018. *Id.* at ¶ 39. His offer letter provided that his annual salary was $49,000.00, plus commission. *Id.* at ¶ 40. From November 1 to November 26, 2018, he worked each weekday from 9:00 a.m. until 5:00 p.m. with a one-hour lunch break except for between November 19 through November 23, 2018, when plaintiffs were sent home for paid time off/paid holiday leave. *Id.* at ¶ 41. Pursuant to Wesley's contract with Trustify, he is entitled to $3,490.41 for the period between November 1 to November 26, 2018. *Id.* at ¶ 42.

Plaintiff Matthew Blanchard worked for Trustify from November 6, 2017 until November 26, 2018 as an Account Executive. *Id.* at ¶ 43. His offer letter provided that his annual salary was $42,000.00, plus commission on revenue he secured. *Id.* at ¶ 44. From November 1 to November 26, 2018, he worked each weekday from 9:00 a.m. until 5:00 p.m. with a one-hour lunch break except for between November 19 through November 23, 2018, when plaintiffs were sent home for paid time off/paid holiday leave. *Id.* at ¶ 45. Pursuant to Blanchard's contract with

Trustify, he is entitled to $2,991.78 in wages for the period between November 1 to November 26, 2018 and $500 in commission. *Id.* at ¶ 46.

Plaintiff Bernadette Vielhaber worked for Trustify from April 17 to November 26, 2018 as a Content Marketing Writer. *Id.* at ¶ 47. Her offer letter provided that her annual salary was $70,000.00. *Id.* at ¶ 48. From November 1 to November 26, 2018, she worked each weekday from 9:00 a.m. until 5:00 p.m. with a one-hour lunch break except for between November 19 through November 23, 2018, when plaintiffs were sent home for paid time off/paid holiday leave. *Id.* at ¶ 49. Pursuant to Vielhaber's contract, she is entitled to $4,986.30 for the period between November 1 to November 28, 2018. *Id.* at ¶ 50.

Lastly, plaintiff Andrew Little worked for Trustify from April 17, 2017 to November 26, 2018 as a Customer Success Manager. *Id.* at ¶ 51. His offer letter provided that his annual salary was $50,000.00, plus 7% of the gross amount of revenue he sold. *Id.* at ¶ 52. From November 1 to November 26, 2018, he worked each weekday from 9:00 a.m. until 5:00 p.m. with a one-hour lunch break except for between November 19 through November 23, 2018, when plaintiffs were sent home for paid time off/paid holiday leave. *Id.* at ¶ 53. Pursuant to Little's contract with Trustify, he is entitled to $3,561.64 in wages for the period between November 1 and November 26, 2018 and $1,300.00 in commission. *Id.* at ¶ 54.

## III. Jurisdiction, Venue, and Service of Process

A court must have both subject matter and personal jurisdiction over a defaulting defendant before it can render a default judgment. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the instant action alleges violations of federal law, the FLSA. The Court also has subject-matter jurisdiction over plaintiffs' breach of contract claim pursuant to 28 U.S.C. § 1367 because the claim is part of the same case and controversy as the FLSA

claims. This Court also has personal jurisdiction of defendants because Trustify is a Virginia corporation and Boice is a resident of Virginia. Venue is likewise proper under 28 U.S.C. § 1391(b)(1) because defendants reside within this judicial district.

Additionally, both defendants were properly served. Boice was served by posting on his usual place of abode in accordance with Virginia Code § 8.01-296 (Dkt. No. 6). Trustify was served through the Clerk of the Commonwealth of Virginia State Corporation Commission as its agent pursuant to Virginia Code § 12.1-19.1 (Dkt. No. 7). These methods of service are authorized under Virginia law and, therefore, comply with Fed. R. Civ. P. 4(e)(1), (h)(1)(A). Defendants failed to answer within the 21 day timeframe required by Fed. R. Civ. P. 12(a)(1)(A)(i). Instead, after plaintiffs requested an entry of default judgment and the Clerk filed an entry of default, defendants failed to appear at the hearing for plaintiffs' motion for default judgment.

## IV. Standard

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment

as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)).

Although well-pleaded factual allegations are accepted as true for default of judgment purposes, a party who defaults does not admit the allegations in the claim as to the amount of damages. *South Bank & Trust Co. v. Pride Grp. LLC*, 2015 U.S. Dist. LEXIS 10554, at *10 (E.D. Va. Jan. 28, 2015) (citing Fed. R. Civ. P. 8(b)(6)). Once a court concludes that liability is established, it must then independently calculate the appropriate amount of damages by either conducting a formal evidentiary hearing under Fed. R. Civ. P. 55(b)(2) or reviewing affidavits or documents attached to plaintiff's motion. *Id.* at *10-11 (citing *Anderson v. Found. for Advancement*, 155 F.3d 500, 507 (4th Cir. 1998)).

Here, because defendants have not timely responded, the well-pleaded allegations of fact contained in the Complaint are deemed to be admitted, but not with respect to damages.

## V. Analysis

Having examined the record, the undersigned finds that the well-pleaded allegations of fact in the Complaint (Dkt. No. 1), supported by plaintiff's Motion for Default Judgment (Dkt. No. 13) and accompanying documents, establish that defendants violated the FLSA by failing to pay plaintiffs' minimum wage and by retaliating against them for engaging in FLSA-protected activity as well as breached plaintiffs' employment contracts. Accordingly, the undersigned finds that judgment should be entered in plaintiffs' favor as set forth below.

### a. Violation of the FLSA Minimum Wage Provision

To establish a violation under the FLSA for non-payment of minimum wage under 29 U.S.C. § 206, a plaintiff must show that (1) the plaintiff was employed by the defendant, (2) the

plaintiff was engaged in interstate commerce or in the production of goods for interstate commerce, (3) the plaintiff was not compensated for all hours worked during each workweek at a rate equal to or greater than the applicable minimum wage, and (4) none of the exemptions in 29 U.S.C. § 213 apply. *See* 29 U.S.C. § 206. The undersigned will address each in turn.

First, the FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. § 203(d). Individual defendants can be held liable as employers under the FLSA. *See Brock v. Hamad*, 867 F.2d 804, 808 n. 6 (4th Cir. 1989). Additionally, under the majority rule, an individual corporate officer may be subject to liability in his individual capacity if he acts as a supervisor with sufficient control over the conditions and terms of the plaintiff's employment. *See Zegarra v. Marco Polo, Inc.*, No. 1:08cv891, 2009 U.S. Dist. LEXIS 3845, at *5-6 (E.D. Va. Jan. 21, 2009).

Here, both defendants Trustify and Boice are employers within the meaning of the FLSA. With respect to Trustify, plaintiffs had employment contracts with and worked for the company. Compl. (Dkt. No. 1) ¶ 17. Additionally, Boice was not only the Founder and CEO of Trustify, but also exercised sufficient control over plaintiffs' employment because he oversaw and evaluated their job duties; made or delegated the decision to hire them; set and determined their job duties and responsibilities, and rate and method of payment; set, controlled, and monitored their work schedule; maintained or caused to be maintained all work and employment records relating to them; and had full authority to fire them, which he clearly exercised. *Id.* at ¶ 7; *see also Villatoro Villatoro v. Crespo's Gen. Contracting, LLC*, No. 1:15cv606, 2016 U.S. Dist. LEXIS 59222, at *9 (E.D. Va. Mar. 28, 2016) (finding that an individual owner who controlled the day-to-day operations of the company employer, supervised the plaintiff, had the power to hire, fire, suspend, and discipline plaintiff, and directly or indirectly set the plaintiff's work

schedule and rate of pay, is an "employer" for the purposes of the FLSA). Based on Bocie's status as a supervisor with control, he is liable in his individual capacity.

Second, an "enterprise engaged in commerce or in the production of goods for commerce" is defined, in relevant part, as one that "has employees engaged in commerce or in the production of goods for commerce . . ." and "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . ." 29 U.S.C. § 203(s)(1)(A)(i)-(ii). Here, defendants employed plaintiffs—in Virginia—who engaged in interstate commerce because their business connected customers with private investigators in states outside of Virginia. Compl. (Dkt. No. 1) ¶ 9. Additionally, defendants' annual gross volume of sales made or business done is not less than $500,000.00. *Id.* at ¶ 10.

Third, plaintiffs were not paid any wages for the work they performed between November 1 and the morning of November 19, 2018. *See id.* at ¶¶ 59-67.

And, lastly, none of the exemptions in 29 U.S.C. § 213 apply to plaintiffs' unpaid work. Plaintiffs note that the only exemption that may apply is the executive, administrative, or professional employee exemption under § 213(a)(1). To qualify under this exemption, an employee must "be compensated on a salary basis at a rate of not less than $455 per week . . . ." *See* 29 C.F.R. § 541.600(a). Because defendants did not pay plaintiffs the federal minimum salary between November 1 through November 19, 2018, this exception does not apply.

Accordingly, the undersigned finds that defendants violated the FLSA for non-payment of minimum wages to plaintiffs under 29 U.S.C. § 206 for November 2018.

**b. Violation of FLSA Anti-Retaliation Provision**

To establish a retaliation violation under the FLSA, a plaintiff must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered an adverse action by the employer

subsequent to or contemporaneous with the protected activity; and (3) a casual connection exists between his protected activity and the adverse employment action. *See* 29 U.S.C. § 215(a)(3). A plaintiff engages in FLSA-protected activity when he raises a complaint that is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). The undersigned finds that plaintiffs have properly alleged a claim for retaliation under the FLSA.

Here, plaintiffs engaged in protected activity by collectively emailing defendants and requesting that they pay plaintiffs' wages or, if not, plaintiffs would be "forced to make a complaint to the Virginia Labor Board." *See* Compl. (Dkt. No. 1) ¶ 62. Plaintiffs' actions clearly constitute protected activity because a reasonable employer would understand such action as an assertion of their right to be paid for their work under the FLSA. Second, plaintiffs suffered an adverse action by being sent home the day they demanded payment and, subsequently, by being terminated. *See id.* at ¶¶ 63-67. Lastly, there is a casual connection between plaintiffs demanding payment for their work and being sent home and terminated. On November 19, 2018, plaintiffs met with Boice regarding their paychecks. *Id.* at ¶ 63. At that time, Boice became extremely "angry and threatening" towards them and they were told to take paid time off until after the Thanksgiving holiday. *Id.* at ¶¶ 64-65. On November 26, 2018, plaintiffs were terminated. *Id.* at ¶ 67. The several days gap between plaintiffs' protected activity and the adverse action is sufficient evidence of causation. *But see Gibson v. Only Choice Home Health Care Agency, LLC*, No. 1:18cv0339, 2018 U.S. Dist. LEXIS 207312, at *14 (E.D. Va. Nov. 16, 2018) ("The Fourth Circuit has not defined a 'bright temporal line' but has 'held that a three-or four-month lapse' does not establish causation without an additional explanation.").

Accordingly, the undersigned finds that defendants violated the FLSA for retaliation.

**c. Breach of Contract**

Under Virginia law, the elements of a breach of contract action are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *See Precision Franchising LLC v. Dist. Heights CCS LLC*, No. 1:18cv582, 2018 U.S. Dist. LEXIS 166437, at *15 (E.D. Va. Aug. 29, 2018). The undersigned finds that plaintiffs have met each of these elements.

First, plaintiffs had written employment contracts with Trustify to work in exchange for set wages, some of which were later orally modified for raises. Compl. (Dkt. No. 1) ¶ 7. Second, Trustify breached its obligation to pay plaintiffs for their work in November 2018. *Id.* at ¶ 67. And, lastly, as a result of such breach, plaintiffs suffered damages in lost wages. *Id.* at ¶¶ 26, 30, 34, 38, 42, 46, 50, 54.

Additionally, Boice is individually liable to plaintiffs for Trustify's breach of contract because there are grounds to pierce the corporate veil. Under Virginia law, a court may pierce the corporate veil to find that an individual is the alter ego of a corporation when it finds (1) a unity of interest and ownership between the individual and the corporation and (2) that the individual used the corporate form to evade personal jurisdiction, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage. *See Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 424 (4th Cir. 2011).

With respect to the first factor, Boice commingled Trustify's funds with his personal funds and further used Trusitfy's assets to pay for his personal expenses. Compl. (Dkt. No. 1) ¶ 21. He also undercapitalized Trustify to the extent that it was unable to pay its employees or

vendors. *See id.* at ¶¶ 56-58. This court has found a unity of interest and ownership based on comingling of personal and corporate funds and undercapitalizing the business, among other factors. *See McCarthy v. Giron*, 1:13cv1559, 2014 U.S. Dist. LEXIS 79007, at *40 (E.D. Va. June 6, 2014) ("The Supreme Court of Virginia has identified a number of factors used in determining the first part of the piercing the corporate veil analysis, unity of interest and control between shareholders and a corporation: 1) comingling of personal and corporate funds; 2) siphoning business assets into personal pockets; 3) undercapitalization of the business; and 4) whether business formalities were observed.") (internal citations omitted). Additionally, Boice used the corporate form to commit an injustice by failing to pay his employees' wages so that such funds could be used for personal reasons. *See id.* at 41 (explaining with regard to the second factor, "courts look to determine if there was a legitimate business purpose for the conduct in question").

Accordingly, the undersigned finds that Trustify committed a breach of contract when it failed to pay its employees' wages and that Boice is personally liable for such breach.

**d. Damages**

As a result of defendants FLSA violations and breach of contract, the undersigned finds that plaintiffs are entitled to damages.

The FLSA requires employers to keep certain records of hours worked and wages paid. *See* 29 U.S.C. § 211(c). When an employer fails to keep adequate records, the employee enjoys a lenient burden of proof. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* The burden then shifts

to the employer to produce evidence of the precise amount of work performed or with evidence to refute the reasonableness of the inference to be drawn from the employee's evidence. *Id.* "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

Moreover, in FLSA cases, employees are awarded an amount of liquidated damages equal to unpaid wages. *See* 29 U.S.C. § 216(b); *see also Donovan v. Bel-Loc-Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir. 1985) ("the FLSA provides for mandatory liquidated damages"). However, an employer may defend itself against such damages "if the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA." *Donovan*, 780 F.2d at 1118 (quoting 29 U.S.C. § 260). The employer has the burden of proof for this defense. *Id.*

Here, defendants have failed to appear and present any defense to plaintiffs' allegations in the instant action. Accordingly, the undersigned finds that plaintiffs are entitled to the following damages.

**i. Damages Owed to Matthew Scott**

With respect to the minimum-wage violation under the FLSA, Scott is owed $609.00 in unpaid minimum wages for the twelve full days he worked in November 2018 from 9:00 a.m. to 5:00 p.m. *See* Ex. A, Scott Affidavit (Dkt. No. 14-1) ¶ 13. Accordingly, Scott is owed an equal amount in liquidated damages for such violation, totaling to $1,218.00.

With respect to the retaliation violation under the FLSA, Scott is owed $15,500.80 in lost wages for retaliation in violation of the FLSA. *Id.* at ¶¶ 27-28. This figure represents his weekly wage of $1,027.40[4] multiplied by the 22 weeks between November 26, 2018 and April 29, 2019

---

[4] Plaintiffs state that Scott's weekly wage is $1,442.30. Pls. Br. (Dkt. No. 14) 13. However, Scott's annual salary ($75,000.00) divided by 365 days equals $205.48 per day. Accordingly, Scott's weekly wage is $1,027.40.

($22,602.80) minus the $7,102.00 in wages he earned since obtaining his new job in January 2019, where he earns less than his position at Trustify. *See id.* Scott also seeks an equal amount in liquidated damages, totaling to $31,001.60.

And, lastly, with respect to the breach of contract claim, Scott is owed $5,342.48[5] for the 26 days in November 2018 that he was employed by Trustify but not paid. *Id.* at ¶¶ 25-26. This figure is calculated by dividing his annual salary ($75,000.00) by 365 days ($205.48 per day) multiplied by the 26 days he was employed but not paid by defendants in November 2018. To avoid double recovery for both unpaid minimum wages and contract wages for the hours worked in November 2018, the undersigned subtracts $1,218.00 from Scott's contract wage claim, totaling to $4,124.48.

Accordingly, Scott is entitled to an award of **$35,126.08** for defendants' FLSA violations and breach of contract.

**ii. Damages Owed to Elisabeth Nugent**

With respect to the minimum-wage violation under the FLSA, Nugent is owed $609.00 in unpaid minimum wages for the twelve full days she worked in November 2018 from 9:00 a.m. to 5:00 p.m. *See* Ex. B, Nugent Affidavit (Dkt. No. 14-1) ¶ 13. Accordingly, Nugent is owed an equal amount in liquidated damages for such violation, totaling to $1,218.00.

With respect to the retaliation violation under the FLSA, Nugent is owed $4,986.45 in lost wages for retaliation in violation of the FLSA. *Id.* at ¶¶ 27-28. This figure represents her weekly wage of $712.35[6] multiplied by the 7 weeks between November 26, 2018 and January

---

[5] Plaintiffs state that Scott is owed $5,342.00 in breach of contract claims, Pls. Br. (Dkt. No. 14) 13; however, the figure is $5,342.48 ($205.48 times 26).

[6] In Nugent's Affidavit, she says that her annual salary was $52,000.00 per year but that she was "later provided raises and [her] salary was $63,000 per year as of" without filling in a date. *See* Nugent Affidavit (Dkt. No. 14-1) ¶ 11. Although Nugent claims she was awarded an increase in salary, she failed to provide any documentation of such increase. Accordingly, the undersigned finds that Nugent's salary was $52,000.00 per year, not $63,000.00.

14, 2019, when Nugent obtained a new job that pays more than her position at Trustify. *Id.* at ¶ 27. Nugent also seeks an equal amount in liquidated damages, totaling to $9,972.90.

And, lastly, with respect to the breach of contract claim, Nugent is owed $3,704.22[7] for the 26 days of November 2018 that she was employed by Trustify but not paid. *Id.* at ¶¶ 25-26. This figure is calculated by dividing her annual salary ($52,000.00) by 365 days ($142.47 per day) multiplied by the 26 days she was employed but not paid by defendants in November 2018. To avoid double recovery for both unpaid minimum wages and contract wages for the hours worked in November 2018, the undersigned subtracts $1,218.00 from Nugent's contract wage claim, totaling to $2,486.22.

Accordingly, Nugent is entitled to an award of **$12,459.12** for defendants' FLSA violations and breach of contract.

**iii. Damages Owed to Kevin Wiggins**

With respect to the minimum-wage violation under the FLSA, Wiggins is owed $609.00 in unpaid minimum wages for the twelve full days he worked in November 2018 from 9:00 a.m. to 5:00 p.m. *See* Ex. C, Wiggins Affidavit (Dkt. No. 14-1) ¶ 12. Accordingly, Wiggins is owed an equal amount in liquidated damages for such violation, totaling to $1,218.00.

With respect to the retaliation violation under the FLSA, Wiggins is owed $9,726.29[8] in lost wages for retaliation in violation of the FLSA. *Id.* at ¶¶ 26-27. This figure represents his annual salary of $50,000.00 divided by 365 days ($136.99 per day) multiplied by 71 days, representing the time between November 26, 2018 and February 5, 2019, when he began a new

Nugent's salary ($52,000.00) divided by 365 days equals $142.47 per day. Accordingly, Nugent's weekly wage is $712.35.

[7] Plaintiffs state that Nugent is owed $4,487.67 in breach of contract claims, Pls. Br. (Dkt. No. 14) 14; however, the figure is $4,487.60 ($142.47 times 26).

[8] Plaintiffs state that Wiggins is owed $9,726.03 in lost wages for retaliation, *id.*; however, the figure is $9,726.29 ($136.99 times 71).

job that pays more than his position at Trustify. *Id.* at ¶ 26. Wiggins also seeks an equal amount in liquidated damages, totaling to $19,452.58.

And, lastly, with respect to the breach of contract claim, Wiggins is owed $3,561.74[9] for the 26 days of November 2018 that he was employed by Trustify but not paid. *Id.* at ¶¶ 24-25. This figure is calculated by dividing his annual salary ($50,000.00) by 365 days ($136.99 per day) multiplied by the 26 days he was employed but not paid by defendants in November 2018. To avoid double recovery for both unpaid minimum wages and contract wages for the hours worked in November 2018, the undersigned subtracts $1,218.00 from Wiggins' contract wage claim, totaling to $2,343.74.

Accordingly, Wiggins is entitled to an award of **$21,796.32** for defendants' FLSA violations and breach of contract.

**iv. Damages Owed to Stacey Blackburn**

With respect to the minimum-wage violation under the FLSA, Blackburn is owed $609.00 in unpaid minimum wages for the twelve full days she worked in November 2018 from 9:00 a.m. to 5:00 p.m. *See* Ex. D, Blackburn Affidavit (Dkt. No. 14-1) ¶ 13. Accordingly, Blackburn is owed an equal amount in liquidated damages for such violation, totaling to $1,218.00.

With respect to the retaliation violation under the FLSA, Blackburn is owed $29,534.12[10] in lost wages for retaliation in violation of the FLSA. *Id.* at ¶¶ 27-28. This figure represents her annual salary of $70,000.00 divided by 365 days ($191.78 per day) multiplied by 154 days,

---

9 Plaintiffs state that Wiggins is owed $3,561.64 in breach of contract claims, Pls. Br. (Dkt. No. 14) 14; however, the figure is $3,561.74 ($136.99 times 26).

10 In Blackburn's affidavit, she states that she is owed $29,615.28 in lost wages for retaliation, *see* Blackburn Affidavit (Dkt. No. 14-1) ¶ 28; however, the figure is $29,534.12 ($191.78 times 154).

representing the time between November 26, 2018 and April 29, 2019. *Id.* Blackburn also seeks an equal amount in liquidated damages, totaling to $59,068.24.

And, lastly, with respect to the breach of contract claim, Blackburn is owed $4,986.28[11] for the 26 days of November 2018 that she was employed by Trustify but not paid. *Id.* at ¶¶ 25-26. This figure is calculated by dividing her annual salary ($70,000.00) by 365 ($191.78) multiplied by the 26 days she was employed but not paid by defendants in November 2018. To avoid double recovery for both unpaid minimum wages and contract wages for the hours worked in November 2018, the undersigned subtracts $1,218.00 from Blackburn's contract wage claim, totaling to $3,768.28.

Accordingly, Blackburn is entitled to an award of **$62,836.52** for defendants' FLSA violations and breach of contract.

**v. Damages Owed to Bey Wesley**

With respect to the minimum-wage violation under the FLSA, Wesley is owed $609.00 in unpaid minimum wage for the twelve full days he worked in November 2018 from 9:00 a.m. to 5:00 p.m. *See* Ex. E, Wesley Affidavit (Dkt. No. 14-1) ¶ 12. Accordingly, Wesley is owed an equal amount in liquidated damages for such violation, totaling to $1,218.00.

With respect to the retaliation violation under the FLSA, Wesley is owed $9,531.75[12] in lost wages for retaliation in violation of the FLSA. *Id.* at ¶¶ 26-27. This figure represents his annual salary of $49,000.00 divided by 365 days ($134.25 per day) multiplied by 71 days, representing the time between November 26, 2018 and February 5, 2019, when he began a new

[11] Plaintiffs state that Blackburn is owed $4,986.30 in breach of contract claims, Pls. Br. (Dkt. No. 14) 15; however, the figure is $4,986.28 ($191.78 times 26).

[12] Plaintiffs state that Wesley is owed $9,531.51 in lost wages for retaliation, *id.*; however, the figure is $9,531.75 ($134.25 times 71).

job. *Id.* at ¶ 26. Wesley also seeks an equal amount in liquidated damages, totaling to $19,063.50.

And, lastly, with respect to the breach of contract claim, Wesley is owed $3,490.50[13] for the 26 days of November 2018 that he was employed by Trustify but not paid. *Id.* at ¶¶ 24-25. This figure is calculated by dividing his annual salary ($49,000.00) by 365 days ($134.25 per day) multiplied by the 26 days he was employed but not paid by defendants in November 2018. To avoid double recovery for both unpaid minimum wages and contract wages for the hours worked in November 2018, the undersigned subtracts $1,218.00 from Wesley's contract wage claim, totaling to $2,272.50.

Accordingly, Wesley is entitled to an award of **$21,336.00** for defendants' FLSA violations and breach of contract.

**vi. Damages Owed to Matthew Blanchard**

With respect to the minimum-wage violation under the FLSA, Blanchard is owed $609.00 in unpaid minimum wages for the twelve full days he worked in November 2018 from 9:00 a.m. to 5:00 p.m. *See* Ex. F, Blanchard Affidavit (Dkt. No. 14-1) ¶ 13. Accordingly, Blanchard is owed an equal amount in liquidated damages for such violation, totaling to $1,218.00.

With respect to the retaliation violation under the FLSA, Blanchard is owed $1,726.05[14] in lost wages for retaliation in violation of the FLSA. *Id.* at ¶¶ 25-26. This figure represents his annual salary of $42,000.00 divided by 365 days ($115.07 per day) multiplied by 15 days,

---

[13] Plaintiffs state that Wesley is owed $3,490.41 in breach of contract claims, Pls. Br. (Dkt. No. 14) 15; however, the figure is $3,490.50 ($134.25 times 26).

[14] In Blanchard's Affidavit, he states that he is owed $1,8541.09 in lost wages for retaliation, Blanchard Affidavit (Dkt. No. 14-1) ¶ 26; however, the figure is $1,726.05 ($115.07 times 15).

representing the time between November 26 and December 3, 2018, when he began a new job. *Id.* at ¶ 25. Blanchard also seeks an equal amount in liquidated damages, totaling to $3,452.10.

And, lastly, with respect to the breach of contract claim, Blanchard is owed $2,686.33[15] for the 19 days of November 2018 that he was employed by Trustify but not paid. *Id.* at ¶¶ 22-23. This figure is calculated by dividing his annual salary ($42,000.00) by 365 days ($115.07 per day) multiplied by the 19 days he was employed but not paid by defendants in November 2018 plus $500.00 in unpaid and owed commission. To avoid double recovery for both unpaid minimum wages and contract wages for the hours worked in November 2018, the undersigned subtracts $1,218.00 from Blanchard's contract wage claim, totaling to $1,468.33.

Accordingly, Blanchard is entitled to an award of **$4,920.43** for defendants' FLSA violations and breach of contract.

**vii. Damages Owed to Bernadette Vielhaber**

With respect to the minimum-wage violation under the FLSA, Vielhaber is owed $609.00 in unpaid minimum wage for the twelve full days she worked in November 2018 from 9:00 a.m. to 5:00 p.m. *See* Ex. G, Vielhaber Affidavit (Dkt. No. 14-1) ¶ 13. Accordingly, Vielhaber is owed an equal amount in liquidated damages for such violation, totaling to $1,218.00.

With respect to the retaliation violation under the FLSA, Vielhaber is owed $29,534.12[16] in lost wages for retaliation in violation of the FLSA. *Id.* at ¶¶ 27-28. This figure represents her annual salary of $70,000.00 divided by 365 days ($191.78 per day) multiplied by 154 days, representing the time between November 26, 2018 and April 29, 2019. *Id.* Vielhaber also seeks an equal amount in liquidated damages, totaling to $59,068.24.

---

[15] Plaintiffs state that Blanchard is owed $2,686.30 in breach of contract claims, Pls. Br. (Dkt. No. 14) 16; however, the figure is $2,186.33 ($115.07 times 19).

[16] In Vielhaber's Affidavit, she states that she is owed $29,615.38 in lost wages for retaliation, Vielhaber Affidavit (Dkt. No. 14-1) ¶ 28; however, the figure is $29,543.12 ($191.78 times 154).

And, lastly, with respect to the breach of contract claim, Vielhaber is owed $4,986.28[17] for the 26 days of November 2018 that she was employed by Trustify but not paid. *Id.* at ¶¶ 25-26. This figure is calculated by dividing her annual salary ($70,000.00) by 365 days ($191.78 per day) multiplied by the 26 days she was employed but not paid by defendants in November 2018. To avoid double recovery for both unpaid minimum wages and contract wages for the hours worked in November 2018, the undersigned subtracts $1,218.00 from Vielhaber's contract wage claim, totaling to $3,768.28.

Accordingly, Vielhaber is entitled to an award of **$62,836.52** for defendants' FLSA violations and breach of contract.

**viii. Damages Owed to Andrew Little**

With respect to the minimum-wage violation under the FLSA, Little is owed $609.00 in unpaid minimum wage for the twelve full days he worked in November 2018 from 9:00 a.m. to 5:00 p.m. *See* Ex. H, Little Affidavit (Dkt. No. 14-1) ¶ 13. Accordingly, Little is owed an equal amount in liquidated damages for such violation, totaling to $1,218.00.

With respect to the retaliation violation under the FLSA, Little is owed $8,493.38[18] in lost wages for retaliation in violation of the FLSA. *Id.* at ¶¶ 27-28. This figure represents his annual salary of $50,000.00 divided by 365 days ($136.99 per day) multiplied by 62 days, representing the time between November 26, 2018 and January 27, 2019, when he started a new job that paid more than his position at Trustify. *Id.* Little also seeks an equal amount in liquidated damages, totaling to $16,986.76.

---

[17] Plaintiffs state that Vielhaber is owed $4,986.30 in breach of contract claims, Pls. Br. (Dkt. No. 14) 17; however, the figure is $4,986.28 ($191.78 times 26).

[18] Plaintiffs state that Little is owed $8,493.15 in lost wages for retaliation, *id.*; however, the figure is $8,493.38 ($136.99 times 62).

And, lastly, with respect to the breach of contract claim, Little is owed $4,861.74[19] for the 26 days of November 2018 that he was employed by Trustify but not paid. *Id.* at ¶¶ 25-26. This figure is calculated by dividing her annual salary ($70,000.00) by 365 days ($136.99 per day) multiplied by the 26 days he was employed but not paid by defendants in November 2018, totaling to $3,561.74, plus $1,300 in unpaid commission. To avoid double recovery for both unpaid minimum wages and contract wages for the hours worked in November 2018, the undersigned subtracts $1,218.00 from Little's contract wage claim, totaling to $3,643.74.

Accordingly, Little is entitled to an award of **$20,630.50** for defendants' FLSA violations and breach of contract.

#### ix. Attorney's Fees

Lastly, plaintiffs seek an award of $16,848.00 in attorneys' fees and $636.00 in costs. In an attached declaration by Jack Jarrett, he stated that he performed 48 hours of work on the instant action at a billable rate of $358.00 per hour, totaling to $16,848.00 in fees. *See* Jarrett Declr. (Dkt. No. 14-2) ¶¶ 2-6. Additionally, the total costs incurred amounted to $626.00 for filing fees and service of process. *Id.* at ¶ 7. Accordingly, the undersigned finds that plaintiffs are entitled to an award of attorney's fees and costs in the amount of **$17,484.00** against defendants.

## VI. Recommendation

For the foregoing reasons, the undersigned recommends:

1) Granting Plaintiffs' Amended Motion for Default Judgment Against Defendants Trustify, Inc. and Daniel K. Boice (Dkt. No. 13); and
2) Awarding Plaintiffs $259,425.49.

---

19 Plaintiffs state that Little is owed $4,861.64 in breach of contract claims, Pls. Br. (Dkt. No. 14) 17; however, the figure is $4,861.74 (136.99 times 26).

**VII. Notice**

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendants at their address for service of process, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

July 29, 2019
Alexandria, Virginia